Filed 1/16/24  P. v. Flores CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RALPH FLORES,<br><br>    Defendant and Appellant. | 2d Crim. No.B321959<br>(Super. Ct. No. 2020035528)<br>(Ventura County) |

Ralph Flores appeals a judgment following his guilty plea to stalking (Pen. Code, § 646.9, subd. (e))[1] and making criminal threats (§ 422).  The trial court sentenced him to two years in state prison.  Before entering his plea, Flores moved to be diverted, which the court denied.  We conclude, among other things, that the trial court did not abuse its discretion by denying Flores's motion for a developmental disability diversion. (§ 1001.21.)  We affirm.

---

[1] All statutory references are to the Penal Code.

## FACTS

Flores engaged in a long pattern of stalking, harassing, and threatening J.D. He described in "vivid detail" the way "he wants to sexually assault" her and kill her. His long pattern of harassment "shifted to more violent threats." He developed a "specific and imminent timeline for murdering [J.D.] and her husband." His threats included sending photographs of large kitchen knives and "fantasizing" about the death of J.D. and her husband.

The People filed a felony complaint alleging that Flores committed the offenses of stalking, making criminal threats, and placing the victim "in reasonable fear for her safety and the safety of her immediate family."

Flores filed a motion that he be diverted because he had a developmental disability "[p]ursuant to Penal Code Section 1001.20 et seq." The trial court referred the matter to the probation department for a report on diversion. The Tri-Counties Regional Center (Regional Center) filed a proposed diversion plan for Flores.

The probation department filed a report recommending that diversion be denied. It said the Regional Center's diversion plan was not adequate because it did not provide protection for the victim and Flores had "anger management issues."

The People filed a report recommending against diversion and a declaration from a deputy district attorney stating facts about Flores's current danger to J.D. and her husband.

At two different hearings on diversion, a representative of the Regional Center told the trial court that the Regional Center was withdrawing its support for diversion. The Regional Center

2

was concerned that the allegations about Flores's threats, if true, "would pose an ongoing risk to [J.D.]."

The trial court found Flores was not "suitable" for diversion. It said Flores took pictures "of himself with large knives and somehow [found] out where the victim is located." "I have real strong reservations about the safety of the victim. He has been bothering [her] for six years. He's gone out to the place." He continued to contact her. The court was concerned that Flores would "follow through with threats to kill [J.D.] and her husband." There was no way to "monitor him." Flores was not going to be in a "lock" down facility.

## DISCUSSION

### *Denying the Diversion Motion*

A defendant in a criminal case may move for diversion if he or she has a developmental disability. (§ 1001.21, subd. (a).) Diversion is an alternative to the normal criminal procedure to allow eligible developmentally disabled defendants to obtain necessary treatment and rehabilitation services for their disabilities. (§ 1001.20, subd. (b).) "If the divertee has performed satisfactorily during the period of diversion, the criminal charges shall be dismissed at the end of the diversion period." (§ 1001.31.)

If the defendant "consents to the diversion process" and waives his or her right to a speedy trial, "the court shall order the prosecutor, the probation department, and the regional center to prepare reports on specified aspects of the defendant's case." (§ 1001.22.) If from the various reports the court is satisfied the defendant has a "developmental disability" and is "eligible for regional center services," it may grant an order that a "diversion

3

program be implemented for a period of time." (§ 1001.23, subd. (a).)

Before granting diversion, the trial court must be "satisfied that the defendant will not pose an unreasonable risk of danger to public safety." (§ 1001.23, subd. (b).) The court's decision denying a diversion is reviewed "for an abuse of discretion." (*People v. Williams* (2021) 63 Cal.App.5th 990, 1000.) For a reversal, the defendant must show the trial court had " ' "no reasonable basis" ' " for its decision. (*Id.* at p. 1001.)

*Unreasonable Risk of Danger to Public Safety*

Here there was substantial evidence to support the trial court's findings that Flores posed an unreasonable risk to public safety and he was not "suitable" for diversion.

A deputy district attorney filed a declaration stating that Flores in "vivid detail" describes "the way that he wants to sexually assault [J.D.]." Flores "wishes for [J.D.'s] sexual assault and ultimate death." He gave a "specific and *imminent timeline for murdering [J.D.] and her husband.*" (Italics added.) He did this "in conjunction with sending photographs of large kitchen knives and fantasizing about their demise." The diversion plan would not protect the victims because it would allow Flores "to remain effectively unmonitored out of custody." Initiating a diversion plan "at this time" would not give Flores's treating doctors the ability to curb or predict his "violent tendencies" to protect his victims. Counsel declared Flores "poses an unreasonable risk to public safety." Flores's threats are "explicit, detailed, and persistent."

The victim said she does not know Flores. For six years Flores "harassed" and stalked her by calling and texting her. On one day he left "31 voicemails within about 42 minutes." "He

4

would write things sexual in nature about [her] body and what he wanted to do to it." He threatened to kill her and her husband. J.D.'s husband said Flores conducted a long pattern of harassment but his "tactics" have "*shifted to more violent threats.*"

The probation department recommended that diversion be denied. It noted that the Regional Center's initial proposed diversion plan does not "prohibit victim contact," and "terms to protect the victim were not even addressed." The probation department said Flores has "anger management issues."

The prosecutor noted that Flores "made several attempts to make physical, personal contact with [J.D.]."

The Regional Center initially filed a proposed three-page diversion plan for Flores. But at the first diversion hearing, the Regional Center changed its position. Mr. Scott, who represented the Regional Center, told the trial court the Regional Center was *withdrawing* its support for diversion. He said, "[T]hese allegations, they're very serious allegations, and if *they are proved, then they would pose an ongoing risk to the alleged victim.*" (Italics added.)

Flores notes that he "renewed his request for diversion." But he concedes, "[b]y this point in time, [the Regional Center] was also *recommending against diversion* for [Flores]." (Italics added.) When the Regional Center, which provides the diversion services, is opposed to diversion for a defendant, as here, this constitutes strong evidence in support of the trial court's decision. The Regional Center is in the best position to know whether it can provide safe and effective diversion services.

5

*Premature Decision*

Flores contends the trial court did not have sufficient reports to make a decision on diversion. But it obtained the reports required by the statute. It had a report from the People, the probation department, and the Regional Center. (§ 1001.22.)

Flores contends the trial court should have waited until it received another written report from the Regional Center. But at the two diversion hearings, the Regional Center opposed a diversion order and indicated that it could not provide diversion services for Flores. The court could reasonably find it was not necessary for the Regional Center to provide another written report that would merely confirm what it had already represented to the court at the two hearings. Moreover, the Regional Center's current position was consistent with the probation report and the evidence the People presented.

Flores notes that the trial court indicated that it would be helpful to have another report from the Regional Center before deciding on diversion. The court said, "You know what, it would be really helpful before I make that finding if I had something in writing from [the Regional Center] after they've had a chance for their mental health team to do whatever they do in terms of preparing for court." Flores claims the court's comments impeach the court's subsequent final decision to deny diversion without obtaining that supplemental report.

But the trial court's comments before it reaches its final decision cannot be used to impeach the final judgment. (*Burbank-Glendale-Pasadena Airport Authority v. Hensler* (1991) 233 Cal.App.3d 577, 591.) "There are instances where a court's comments may be valuable in illustrating the trial judge's theory *but they may never be used to impeach the order or judgment.*"

6

(*Ibid.*, italics added.)  The court may change its position before it renders a final judgment.  A "trial judge's prejudgment oral expressions do not bind the court" or prevent it from changing its position in the final judgment.  (*Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 268.)  Here there was a reasonable basis for it to do so given the Regional Center's repeated current position against diversion at *two hearings*, the probation report, and the People's evidence.  Flores has not shown error.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.



GILBERT, P. J.

We concur:


BALTODANO, J.


CODY, J.


7

Rocky J. Baio, Judge

Superior Court County of Ventura

_____

Robert L. Hernandez, under appointment by the Court of
Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief
Assistant Attorney General, Susan Sullivan Pithey, Assistant
Attorney General, Wyatt E. Bloomfield and Christopher G.
Sanchez, Deputy Attorneys General, for Plaintiff and
Respondent.